Ernst Fenske, Appellant, v. Equitable Life Assurance Society et al., Appellees.

Gen. No. 44,858.

Opinion filed March 8, 1950. Released for publication April 3, 1950.

LANDIS & LANDIS and JOSEPH B. GILBERT, all of Chicago, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, for appellee; FRANK D. MAYER, JACOB X. SCHWARTZ, and JOHN T. MOORE, all of Chicago, of counsel.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

This is an action to recover the alleged cash surrender value of a life insurance policy. The facts in point of law at issue were submitted to the trial court as an agreed case under Rule 48 of the Supreme Court [Ill. Rev. Stat. 1949, ch. 110, par. 259.48; Jones Ill. Stats. Ann. 105.48]. The court found the issues in favor of defendant and entered judgment accordingly. Plaintiff appeals.

June 18, 1914, defendant, The Equitable Life Assurance Society, hereinafter called "Equitable," issued a twenty-payment life plan policy for $20,000 on the life of plaintiff. The annual premiums were fixed in the amount of $997.40. Anna Fenske, wife of the insured, was designated beneficiary. February 10, 1930, plaintiff asked that the policy be changed to an ordinary life plan and that the beneficiary be changed to "Anna

59

Fenske, wife, if living; if not, to child or children surviving, share and share alike." The requested changes were made by Equitable and the annual premium was reduced to $822.40. March 18, 1930, Equitable paid to plaintiff the sum of $3,681.74, representing the difference in the cash values between the two policies. Afterward, at plaintiff's request, Equitable made the policy payable to "the insured's executors or administrators."

February 16, 1931, plaintiff, "as donor," entered into a written trust agreement with the Chicago Title and Trust Company as trustee. The trust agreement provided that upon the death of the donor the trustee, after the payment of certain expenses, shall divide "all cash remaining in the hands of the trustee" equally among the children of the donor, Frederick A. Fenske, Emilie Fenske Lampke, Alma Fenske Markow and Helen Fenske Riendeau. The trust agreement further provided that "should any of such beneficiaries die before receiving his or her share, such share shall be delivered, distributed, and paid as the deceased beneficiary may by his or her last will and testament direct, and in the absence of such direction, if no will of the beneficiary be admitted to probate within eighteen months of the donor's death, such share shall be divided among the descendants, if any, of the deceased beneficiary *per stirpes* and not *per capita;* and, if no such descendant be then living, the share shall be divided proportionally among the other shares or portions."

Pursuant to the terms of the trust agreement plaintiff assigned and delivered to the trustee the policy here in controversy.

June 18, 1934, the policy lapsed for failure of plaintiff to pay the annual premium due on that date, and in accordance with its terms the policy was continued in force as paid-up extended term insurance for $20,387 until but not including May 24, 1945.

February 15, 1943, in response to an inquiry from plaintiff's attorney regarding the policy here in question, Equitable replied as follows:

"While the terms of the policy do not provide for a cash value of this extended term insurance, if the policy were surrendered for cancellation, *fully released by all parties at interest,* the Society would be willing to make a cash allowance for surrender of the unexpired extended term insurance. The amount allowable as of February 13, 1943 is $4,063.94. The amount allowable for surrender of extended term insurance decreases as the policy approaches the end of the extended term period, hence, we are unable to guarantee payment of the amount of $4,063.94 beyond February 13th." (Italics ours.)

March 30, 1943, plaintiff entered into an agreement with the trust company to indemnify it from all losses which it may incur by reason of its consent to the termination of the trust agreement or by reason of the redelivery of the policy to the donor (plaintiff herein). The indemnity agreement was also signed by all of plaintiff's children. On the same day the release, indemnity agreement and the insurance policy were tendered to Equitable by plaintiff. Equitable refused to make a cash allowance for surrender of the unexpired extended term insurance, on the ground that the policy had not been released by all parties at interest.

According to the stipulation the sole question presented is whether "plaintiff, upon the delivery of certain documents to Equitable on March 30, 1943, thereupon became entitled to a cash allowance of $3,787.09 by reason of Equitable's letter of February 15, 1943."

At the time of the tender plaintiff was seventy-five years of age. He had four adult children and six grand-

children, ranging from sixteen to thirty-five years of age. None of the grandchildren joined in the release or indemnity agreement. Equitable contends that plaintiff's six grandchildren had interests contingent upon the survival of their respective parents and whether such parent died testate or intestate; that the contingent interests in the trust could not be determined until the death of the plaintiff, and therefore the consents of all the grandchildren were indispensable to the termination of the trust. Moreover, the youngest grandchild being a minor could not execute a valid release without the appointment of a guardian.

Where all the parties interested in the trust fund are *sui juris* they may consent to a termination of the trust and distribution of the fund (Perry on Trusts, sec. 920), but this rule has never been applied where there are contingent interests in the trust which cannot be determined until the happening of certain events or where the interests of minors are involved. (*Anderson v. Williams,* 262 Ill. 308.) In the event some of the beneficiaries refuse to consent to the revocation of the trust, or are under an incapacity, or are not ascertained, the settlor cannot revoke the trust although the other beneficiaries consent. (Scott on Trusts, vol. 3, par. 340, p. 1865.) Trusts cannot be terminated by agreement of the beneficiaries except in cases where the object of the trust has been practically accomplished and all interests created by it have become vested. (*Altemeier v. Harris,* 403 Ill. 345; *Mohler v. Wesner,* 382 Ill. 225; *Hubbard v. Buddemeier,* 328 Ill. 76.)

Plaintiff insists that the only parties at interest are the insured and the trustee and that the trust agreement is not a part of the contract of insurance. By its terms the trust was irrevocable. The provisions of the trust were by reference incorporated into the policy and we think all the beneficiaries acquired indefeasible

62

interests according to the terms of the trust agreement. (*Mahony v. Crocker,* 58 Cal. App. (2d) 196, 136 P. (2d) 810.) Since October 1934, Equitable had in its possession a copy of the insurance trust agreement executed by plaintiff and it was therefore charged with knowledge of the rights of the beneficiaries.

██ Trusts are enforced, not only against those persons who are rightfully possessed of the property but also against all persons who come into possession of trust property with actual or presumptive notice of the trust. (*Pratt v. Board of Education of Dist. No. 61, Kankakee Co.,* 326 Ill. App. 610.) To the same effect are *Evans v. Moore,* 247 Ill. 60, and *Pelcak v. Bartos,* 328 Ill. App. 435. Here, under the terms of the policy, after conversion by plaintiff into paid-up term insurance, Equitable was not required to make payment of a cash surrender value. In requiring consent to revocation of the trust from all parties at interest Equitable sought to protect itself against the claims of all possible beneficiaries in the event the insured died before the policy expired. In our view, plaintiff's grandchildren are parties at interest within the meaning of the phrase appearing in Equitable's letter of February 15, 1943, and failure to obtain their consent warranted Equitable's refusal to pay plaintiff's claim.

For the reasons stated, the judgment is affirmed.

*Judgment affirmed.*

BURKE and KILEY, JJ., concur.